UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN KUNDE,

    Plaintiff,                               Hon. Robert Holmes Bell

v.                                                      Case No. 1:13-CV-944

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

        The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on the date her disability insured status expired. (Tr. 29). She successfully completed high school and worked previously as a secretary. (Tr. 29). Plaintiff applied for benefits on November 25, 2009, alleging that she had been disabled since February 2, 2005, due to depression with psychosis and OCD. (Tr. 22, 102-03, 127). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 55-101). On January 12, 2012, Plaintiff appeared before ALJ Kathleen Eiler with testimony being offered by Plaintiff and a vocational expert. (Tr. 35-54). In a written decision dated February 23, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 22-30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-7). Plaintiff subsequently initiated this pro se action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2005. (Tr. 24). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On March 6, 2001, Plaintiff was examined by Dr. Russell Brubaker. (Tr. 225). Plaintiff rated her depression as "2-3 of 10." (Tr. 225). The doctor characterized Plaintiff's affect as "bright." (Tr. 225). Plaintiff was advised to consume "less alcohol for better mood stability." (Tr. 225). On June 5, 2001, Plaintiff reported that she was "doing pretty good." (Tr. 224). On

August 7, 2001, Plaintiff rated her depression as "2 of 10." (Tr. 223). Dr. Brubaker observed that Plaintiff was "fairly stable." (Tr. 223).

Treatment notes dated October 2, 2001, indicate that Plaintiff's condition had worsened, but that she was not regularly taking her medication. (Tr. 222). On April 23, 2002, Plaintiff reported that her depression was "3 of 10." (Tr. 219). Plaintiff also reported that she recently vacationed in Aruba. (Tr. 219). Dr. Brubaker characterized Plaintiff's condition as "fairly stable, but some intrusive thoughts." (Tr. 219). Plaintiff's medication regimen was modified. (Tr. 218). On January 22, 2002, Plaintiff reported that she "just built a new house" on which she "had done subcontracting." (Tr. 220). On October 1, 2002, Plaintiff rated her depression as "3 of 10." (Tr. 215). Dr. Brubaker observed that Plaintiff's condition was "stable" following the modification to her medication regimen. (Tr. 215).

Treatment notes dated October 14, 2003, indicated that Plaintiff's depression was "2 of 10" and that her condition was "fairly stable." (Tr. 204). Plaintiff also reported that she recently traveled to New York City. (Tr. 204). On July 8, 2003, Plaintiff reported that she was "going on vacation" the following week. (Tr. 211). Treatment notes dated May 25, 2004, indicate that Plaintiff's depression was "3 of 10" and that her condition was "fairly stable." (Tr. 201). Plaintiff's GAF score was rated as 85.[1] (Tr. 200).

On August 26, 2004, Plaintiff began treating with Dr. Michael Thebert. (Tr. 199). Plaintiff reported that she was "feeling relatively well recently but does have irritability with her

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 85 indicates "absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns." *Id.* at 34.

periods and has some OCD type behaviors that seem worse with her periods." (Tr. 199). A mental status examination revealed the following:

> Joan is friendly, casually groomed, but tense. Signs of mild depression are present. She denies having suicidal ideas. There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content is appropriate. There are signs of anxiety.

(Tr. 199). Plaintiff's medication regimen was modified. (Tr. 199).

Following an October 21, 2004 examination Dr. Thebert reported the following:

> Joan is friendly, casually groomed, and relaxed. Mood is entirely normal with no signs of depression or mood elevation. There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content is appropriate. There are no signs of anxiety.

(Tr. 198).

On January 27, 2005, Plaintiff was examined by Dr. Thebert. (Tr. 197). Plaintiff reported that she "has been feeling well" and denied experiencing any psychological symptoms. (Tr. 197). The results of a mental status examination revealed the following:

> Joan is friendly, casually groomed, and relaxed. Mood is entirely normal with no signs of depression or mood elevation. There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content is appropriate. There are no signs of anxiety.

(Tr. 197).

Treatment notes dated September 8, 2005, indicate that Plaintiff was experiencing "stable" mood. (Tr. 231). Treatment notes dated October 5, 2006, indicate that Plaintiff "feels well"

and is in "stable" condition. (Tr. 298). Treatment notes dated February 1, 2007 indicate that Plaintiff "feels well" and that her mood "seems stable [with] no psychosis." (Tr. 297).

On December 13, 2007, Plaintiff was examined by Dr. Thebert. (Tr. 294). Plaintiff reported that she "feels well except just before her monthly cycle." (Tr. 294). A mental status examination revealed the following:

> Joan is friendly, casually groomed, and relaxed. Mood is entirely normal with no signs of depression or mood elevation. There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content is appropriate. There are no signs of anxiety.

(Tr. 294).

On June 12, 2008, Plaintiff was examined by Dr. Thebert. (Tr. 293). Plaintiff reported that "I feel good now, no problems." (Tr. 293). A mental status examination revealed the following:

> Joan is friendly, casually groomed, and relaxed. Mood is entirely normal with no signs of depression or mood elevation. There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content is appropriate. There are no signs of anxiety.

(Tr. 293).

On March 12, 2009, Plaintiff was examined by Dr. Thebert. (Tr. 291). Plaintiff reported that she "has been feeling very well" and that her "monthly cycles go better with the plan adding Prozac doses then." (Tr. 291). A mental status examination revealed the following:

> Joan is friendly, casually groomed, and relaxed. Mood is entirely normal with no signs of depression or mood elevation. There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is

    logical, and thought content is appropriate.  There are no signs of
    anxiety.

(Tr. 291).

  On December 24, 2009, Plaintiff's friend, John Stachowiak, completed a report regarding Plaintiff's activities.  (Tr. 139-46).  Stachowiak reported that Plaintiff cleans, washes laundry, prepares meals, shops for clothes, food, and household items, and cares for her cat.  (Tr. 139).  Stachowiak also reported that Plaintiff reads, watches television, performs sewing, and listens to music.  (Tr. 143).

  On January 7, 2010, William Schirado, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  (Tr. 257-70).  Schirado concluded that Plaintiff did not satisfy the Part A criteria for any impairment identified in the Listing of Impairments.  (Tr. 258-66).  With respect to Plaintiff's functional limitations, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation.  (Tr. 267).

  On February 11, 2010, Dr. Thebert completed a report regarding Plaintiff's nonexertional limitations.  (Tr. 282-84).  The doctor assessed Plaintiff's abilities in four broad categories: (1) making occupational adjustments; (2) making performance adjustments; (3) making personal/social adjustments; and (4) functional limitations.  (Tr. 282-84).

  With respect to Plaintiff's ability to make occupational adjustments, the doctor reported that Plaintiff experienced extreme[2] limitation with respect to her ability to deal with work

---

[2] The form in question defined "extreme" as "a degree of limitation that is incompatible with the ability to do gainful activity."  (Tr. 282).

stresses. (Tr. 282). The doctor reported that Plaintiff experienced marked[3] limitation with respect to her ability to deal with the public, use judgment, and maintain attention and/or concentration. (Tr. 282). With respect to Plaintiff's ability to follow work rules, relate to coworkers, interact with supervisors, and function independently, the doctor reported that Plaintiff experienced only moderate[4] limitation. (Tr. 282).

With respect to Plaintiff's ability to make performance adjustments, the doctor reported that Plaintiff experienced marked limitation with respect to her ability to understand, remember, and carry out: (1) complex job instructions; (2) detailed but not complex instructions; and (3) simple job instructions. (Tr. 282-83).

With respect to Plaintiff's ability to make personal/social adjustments, the doctor reported that Plaintiff experienced extreme limitation in the following areas: (1) work in coordination with or proximity to others without being distracted by them; and (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 283). The doctor reported that Plaintiff experienced marked limitations in the following areas: (1) behave in an emotionally stable manner; and (2) relate predictably in social situations. (Tr. 283). With respect to Plaintiff's ability to maintain personal appearance and demonstrate reliability, the doctor reported that Plaintiff experienced mild[5] limitation or no limitation. (Tr. 283).

---

[3] The form in question defined "marked" as "limitations that are serious but do not completely interfere with the ability to function independently, appropriately and effectively on a sustained basis." (Tr. 282).

[4] The form in question defined "moderate" as "limitations that result in satisfactory but limited function." (Tr. 282).

[5] The form in question defined "mild" as "limitations that do not significantly limit a person's ability to perform most jobs." (Tr. 282).

As for functional limitations, the doctor reported that Plaintiff experienced "extreme" limitations in the following areas: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary allowances; and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 283-84). With respect to whether Plaintiff experienced episodes of decompensation, the doctor reported that Plaintiff experienced "marked" limitations. (Tr. 283-84). With respect to Plaintiff's ability to maintain concentration, persistence, or pace, the doctor reported that Plaintiff experienced "moderate" limitation. (Tr. 283-84). The doctor further reported that with respect to her ability to perform activities of daily living and maintain social functioning, Plaintiff experienced only "mild" limitation. (Tr. 283-84). The doctor reported that Plaintiff experienced these levels of limitation "prior to 2004." (Tr. 284). The doctor further observed "Joan feels relatively well when home but easily has onset of visual hallucinations with stress. I feel she would not be able to work at all." (Tr. 284).

At the administrative hearing, Plaintiff testified that she was unable to work due to stress. Specifically Plaintiff reported the following:

> Oh, because I get stressed. And any little bit of stress, if I get stressed I see the, the devil's eyes staring at me and everything and people's eyes in magazines, on the TV and so I, I try to avoid stress at all costs, because if I'm under stress then I will see that and it's very frightening. So that's why I take so many breaks and only do a few hours of work here and there. And, and the music, listening to music and rocking just really calms me down and then I'm able to go back and work for maybe an hour.

(Tr. 41).

Plaintiff testified that she requires 11 hours sleep nightly but that her sleep is "sometimes" interrupted by "nightmares about the devil." (Tr. 41-42). Plaintiff reported that "sometimes" she's just "too depressed or too tired" to "do things or accomplish things." (Tr. 42). Plaintiff reported that she never goes shopping on weekends or evenings, when the stores are "really crowded," because "it's nervous-nerve-wracking." (Tr. 43). When asked what she thought "would be the biggest problems, in terms of [her] returning to any type of sustained or ongoing work activity" Plaintiff reported:

> Well, mainly because I need 11 hours of sleep a night and if I was working from 8 to 5 and then had all chores to do, there wouldn't be enough, I wouldn't be getting 11 hours of sleep every night. And also, I only accomplish like two to three hours' worth of work every day because I take so many breaks, either listening to music or a lot of times I'll lay down for half an hour and, and just sleep or rest.
>
> And then if I get too stressed, if someone asks me questions and if I'm really stressed, then I have thoughts of the devil and I see the devil's eyes staring at me and then I'll just block out whatever they're saying. I have no idea what, what they said to me.
>
> And, and when I would have jobs I'd, I'd have to write everything down because I just couldn't remember how to do anything, like on the computer or - - I'm not very good at the computer. So I have to write everything down, every little step, because I just - - the next day will come and I won't remember what to do.

(Tr. 45-46).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[6]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date her insured status expired, Plaintiff suffered from obsessive compulsive disorder and schizoaffective disorder with psychosis, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 24-26).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity to perform work subject to the following limitations: (1) she is able to perform simple, routine, and repetitive tasks in a low stress environment, meaning minimal changes in a routine work setting and no high-paced production rate pace work; (2) she can occasionally interact with supervisors and co-workers, but can never interact with the general public; and (3) she would work best in relative isolation or in very small, familiar groups.  (Tr. 26).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant

can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 12,700 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 50-52). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ denied Plaintiff's claim for benefits.

I.            **The ALJ Properly Assessed the Medical Evidence**

As noted above, Dr. Thebert, more than five years after the expiration of Plaintiff's insured status, completed a report in which he opined that Plaintiff was far more limited than recognized by the ALJ. (Tr. 282-84). The ALJ accorded only "limited weight" to the doctor's opinion. (Tr. 28). Plaintiff argues that she is entitled to relief because the ALJ improperly discounted the opinions from her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion

"is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ discounted Dr. Thebert's opinions because such were "inconsistent with" the doctor's contemporaneous treatment notes, "which consistently indicate that the claimant is stable and doing well." (Tr. 28). The ALJ observed that Plaintiff's reported activities were inconsistent with Dr. Thebert's opinions. (Tr. 28). The ALJ further observed that "Dr. Thebert sees the claimant only every few months and for approximately fifteen minutes per visit." (Tr. 28). Finally, the ALJ noted that Plaintiff's "condition has not warranted hospitalization during the time period in question." (Tr. 28). As the discussion above reveals, the ALJ's rationale for discounting the doctor's opinions, expressed more than five years after the expiration of Plaintiff's insured status, is supported by substantial evidence.

Plaintiff responds that Dr. Thebert's contemporaneous observations are not inconsistent with the opinions he later expressed. Specifically, Plaintiff argues that "stable means unchanged, not symptom[] free." (Dkt. #16 at PageID#355-56). Plaintiff is correct that a diagnosis that one is stable does not necessarily equate to being symptom free. A review of the doctor's

15

contemporaneous treatment notes, however, do not lend support for the argument that Plaintiff's condition during the time period in question was stable but nevertheless extremely limited. Instead, the evidence reveals that so long as Plaintiff took her medication as directed her condition was consistent with the ALJ's RFC determination.

In further support of her position, Plaintiff cites to treatment records which suggest that she experiences difficulty dealing with stress. (Tr. 288-89). Putting aside the fact the records in question are dated almost five years after the expiration of Plaintiff's insured status, the ALJ accounted for Plaintiff's diminished ability to handle stress in his RFC determination and the treatment records cited by Plaintiff do not cast doubt on such. Plaintiff also faults the ALJ for failing to "provide medical evidence or any other evidence" to support his RFC determination. (Dkt. #16 at PageID#358). As noted above, however, Plaintiff bears the burden through step four of the sequential process, the point at which he RFC is determined. Thus, this argument is rejected. In sum, the ALJ's assessment of Dr. Thebert's opinions is consistent with the standard articulated above and is supported by substantial evidence.

**II.        The ALJ Properly Discounted Plaintiff's Subjective Allegations**

As noted above, Plaintiff testified at the administrative hearing that her ability to function was far more limited than the ALJ ultimately recognized. Specifically, Plaintiff repeatedly asserted that she was unable to work due to her inability to deal with people and handle work-related stress. Plaintiff argues that she is entitled to relief because the ALJ improperly rejected her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In assessing Plaintiff's credibility, the ALJ found credible Plaintiff's testimony that she experiences difficulty dealing with stress. (Tr. 27). Accordingly, the ALJ limited Plaintiff to simple, routine, and repetitive work in a low stress environment, with very limited interaction with supervisors and co-workers, and no contact with the general public. (Tr. 26-27). The ALJ further determined, however, that Plaintiff's "allegations that she is incapable of all work activity are not credible." (Tr. 27). In this respect, the ALJ properly concluded that the evidence of record, including Plaintiff's various activities, belied her assertion that she was limited to an extent beyond that recognized by her residual functional capacity. (Tr. 27-28). In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the aforementioned legal standard and is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 12, 2015                                      /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge